THE FOLLOWING ORDER
IS APPROVED AND ENTERED
AS THE ORDER OF THIS COURT:

DATED: November 4, 2016



Susan V. Kelley
Chief United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| In re | Chapter 11 |
| | Case No. 10-39796–svk |
| David A. Olsen and | |
| Becky S. Olsen, | |
| | Jointly Administered |
| Paul E. Olsen and | |
| Cheryl R. Olsen, | |
| Debtors. | |

Decision and Order on Jurisdiction to Consider
Motion to Enforce the Confirmation Order

These Chapter 11 cases featured numerous contentious twists and turns, but after months of negotiations, major constituencies agreed to a Chapter 11 plan. A cornerstone of the plan was the sale of the Debtors' grain facility assets to Archer-Daniels-Midland Company ("ADM"). Some litigation continued after confirmation, including a dispute over whether the liquidating trustee could sell the Debtors' limited liability company interests free and clear of rights of first refusal held by other LLC members. The Court said no, and an appeal of the issue was dismissed.

Eventually, the liquidating trustee filed a final report stating that he had liquidated all the assets, distributed the proceeds and paid or resolved all the claims. The Debtors received a discharge, and on August 23, 2013, the Court entered a final decree closing

the Chapter 11 cases. Now ADM is back, contending that Country Visions Cooperative ("CVC") is asserting claims under another right of first refusal that ADM insists was extinguished by the plan. CVC counters that, although duly recorded in the land records, its right of first refusal was never mentioned in the bankruptcy case, and CVC was not given the requisite notice to purchase the property in accordance with the right of first refusal and Wisconsin law.

Since the property at issue has been sold and no longer belongs to the estate, all creditors have been paid, and this dispute involves non-debtor parties, the Court initially questioned whether it has jurisdiction. The parties have briefed the issue, and the Court now issues this Decision and Order.

## I. STATEMENT OF FACTS

### A. Relevant Provisions of the APA, Plan and Confirmation Order

The comprehensive asset purchase agreement under which ADM bought the Debtors' grain facility assets ("APA") conditioned the sale on ADM's receipt of title free and clear of Claims, Liabilities, and Encumbrances, as defined in the APA. (Docket No. 238 at 134-35, *APA* § 1.) The Plan and Confirmation Order stated that the sale of assets would be free and clear of liens, claims, and encumbrances. (*Id.* at 15 and 17 *Confirmation Order* ¶ BB and ¶ 6; and at 61-62, *Plan* § 7.3.1(e).) The Plan also rejected any executory contracts not expressly assumed. (*Id.* at 81, *Plan* § 13.1.)

The APA, Plan and Confirmation Order further provided that, to the extent permitted by law, ADM was not a successor to the Debtors under any theory of law or equity, and, except as specifically provided in the APA, ADM did not assume any of the Debtors' liabilities. (*Id.* at 136 and 143, *APA* §§ 3 and 9.3(h)(xi); at 16-17, *Confirmation Order* ¶ 5; at 84-85, *Plan* § 15.5.) The Confirmation Order contained a broad injunction

2

based on § 524 of the Bankruptcy Code, protecting ADM from any claims based on acts, omissions, transactions, or other activities that occurred prior to the Confirmation Date.  (*Id.* at 30, *Confirmation Order* ¶ 27.)

The Plan and Confirmation Order included a broad jurisdictional grant, stating that the bankruptcy court would retain jurisdiction to the fullest extent legally permitted "over the Chapter 11 Cases, all proceedings arising under, arising in, or related to the Chapter 11 Cases, the Plan, this Order, and administration of the Liquidating Trust, including, without limitation, the matters set forth in Section 16.1 of the Plan."  (*Id.* at 32, *Confirmation Order* ¶ 32.)  Section 16.1 of the Plan provided that the Court would retain exclusive jurisdiction over matters related to executory contracts.  (*Id.* at 87, *Plan* § 16.1(a).)  It also included jurisdiction to hear and determine disputes relating to the interpretation, implementation, or enforcement of the Plan.  (*Id.* at 88, *Plan* § 16.1(k).)  Finally, Section 16.1 reserved jurisdiction to issue injunctions and other orders, and take necessary action to restrain interference with the consummation, implementation, or enforcement of the Plan or Confirmation Order.  (*Id.* at 88, *Plan* § 16.1(l).)

## B. The Ripon Property and CVC's Right of First Refusal

Among the assets ADM purchased from the Debtors was real property located in Fond du Lac County that the parties refer to as the "Ripon Property."  ADM subsequently transferred the Ripon Property to United Cooperative.  CVC claims to hold a valid and enforceable right of first refusal to purchase the Ripon Property that survived the Debtors' bankruptcy.  Contending that ADM's sale to United Cooperative triggered the right of first refusal, and ADM breached the right, CVC filed an action against ADM and United Cooperative in the Circuit Court for Fond du Lac County.  (Docket No. 455-2, *State Court Complaint*.)  In the state court action, CVC sought: (1) a declaratory

3

judgment that the right of first refusal was valid and enforceable; (2) specific performance; and (3) a money judgment for damages caused by a breach of the implied covenant of good faith and fair dealing.

It is not disputed that the Debtors' schedules did not list CVC or its predecessors, Golden Grain LLC, Agri-Land Co-op, and Agri-Land Partners Cooperative, as creditors or counter-parties to an executory contract. The mailing matrix used to send notices for the Debtors' cases does not list CVC or its predecessors, and they did not receive formal notice of the Debtors' bankruptcy, the Plan or the Confirmation Order. ADM claims that CVC had some notice that the Ripon Property was for sale, but, unlike the battle waged over the Debtors' unrelated LLC interests, there were no proceedings in the case to determine whether the Ripon Property could be sold free and clear of CVC's right of first refusal.

### C. Proceedings on ADM's Motion to Reopen the Bankruptcy Case

A few months after CVC filed its state court complaint, ADM filed a motion in this Court to reopen the Debtors' bankruptcy case. ADM asks the Court to determine that ADM did not succeed to any of the Debtors' liabilities and to interpret and enforce the Plan and Confirmation Order to bar CVC's state court lawsuit. (Docket No. 455.) CVC objected to the motion, challenging ADM's standing to reopen the case and arguing that cause for reopening did not exist because, among other reasons, the state court was poised to consider the same issues ADM sought to have this Court consider. (Docket No. 458.)

The Court held a hearing on the motion to reopen and, given that the Ripon Property was not property of the estate and the dispute had no discernible impact on the Debtors or their creditors, the Court expressed reservations about whether it had

4

jurisdiction to grant the relief ADM ultimately sought. However, the Court concluded that reopening the Debtors' bankruptcy case was a ministerial act. It reopened the case to permit ADM to file a motion or adversary proceeding seeking substantive relief, anticipating that CVC would either object or file a motion to dismiss, and the parties could address the issue of the Court's jurisdiction.

ADM filed a Motion to Enforce the Confirmation Order focusing on the Court's ability to interpret and enforce its own Order. ADM contends that title to the Ripon Property vested in ADM free and clear of CVC's right of first refusal and that CVC's right of first refusal is an executory contract that was rejected by the Confirmation Order.

CVC opposes all relief sought by ADM, asserting that it still possesses a valid and enforceable right of first refusal, and that the Court lacks jurisdiction over the Motion to Enforce the Confirmation Order. It asserts ADM is seeking new relief instead of clarification and enforcement of the Confirmation Order. In CVC's view, the dispute is between ADM and CVC, two non-debtor parties, about whether CVC has a state law property right, and this Court should defer to the state court to decide the issue.

## II. ANALYSIS

### A. Statutory Jurisdiction of the Bankruptcy Court

A court's subject matter jurisdiction is a threshold question. *Illinois v. City of Chicago*, 137 F.3d 474, 478 (7th Cir. 1998). The subject matter jurisdiction of bankruptcy courts is grounded in statute. *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 (1995). Under 28 U.S.C. § 1334(b), the district courts "shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." District courts may refer such matters to bankruptcy judges

5

under 28 U.S.C. § 157(a), and the Eastern District of Wisconsin has made such a reference.

A court cannot confer jurisdiction on itself by purporting to assume it. *See Zerand-Bernal Grp., Inc. v. Cox*, 23 F.3d 159, 164 (7th Cir. 1994) ("A court cannot write its own jurisdictional ticket."). Accordingly, the Plan and Confirmation Order cannot confer jurisdiction on the Court beyond its subject matter jurisdiction. *See In re Heartland Mem'l. Hosp., LLC*, No. 07-20188 JPK, 2011 Bankr. LEXIS 2102 (Bankr. N.D. Ind. June 9, 2011), *aff'd sub nom. Collins & Collins v. Heartland Mem'l. Hosp., LLC*, No. 2:11-CV-322 RM, 2012 U.S. Dist. LEXIS 11231 (N.D. Ind. Jan. 30, 2012) (abrogating confirmed plan's impermissibly broad jurisdiction reservation).

A proceeding "arises under" the Bankruptcy Code if it depends on a right created or determined by a statutory provision of the Code. *Nelson v. Welch (In re Repository Techs., Inc.)*, 601 F.3d 710, 719 (7th Cir. 2010). For example, in a case cited by CVC, a debtor's request that the bankruptcy court find a party in contempt for violation of the discharge injunction was within the court's "arising under" jurisdiction "because it was based on rights explicitly provided in the Bankruptcy Code: the discharge (by virtue of plan confirmation) in 11 U.S.C. § 1141(d) and the discharge injunction in 11 U.S.C. § 524(a)(2)." *Napleton Enters., LLC v. Michael Bahary & Steven Bahary P'ship*, No. 15 C 3146, 2016 U.S. Dist. LEXIS 26253, at *17-18 (N.D. Ill. Mar. 1, 2016). A trustee's suit to recover avoidable transfers also arises under the Code. *See, e.g., Wilkins v. AmeriCorp, Inc. (In re Allegro Law LLC)*, 545 B.R. 675, 698 (Bankr. M.D. Ala. 2016) (counts of complaint for avoidance of preferences, post-petition transfers, and fraudulent transfers "invoke substantive rights created by the Bankruptcy Code and are thus 'arising under' proceedings"). Since ADM's Motion seeks enforcement of the

6

Confirmation Order and Plan, and bankruptcy courts have jurisdiction to approve sales under § 363 and confirm plans under § 1129, arguably this matter arises under those sections. However, the Motion does not rely on either of these statutory provisions or assert that they entitle ADM to interpretation or enforcement once the Court approved the sale and confirmed the Plan. Accordingly, determining whether CVC's right of first refusal survived the bankruptcy does not arise under the Bankruptcy Code.

Proceedings "arising in" a case under title 11 concern "administrative matters that arise *only* in bankruptcy cases." *Ortiz v. Aurora Health Care, Inc. (In re Ortiz)*, 665 F.3d 906, 911 (7th Cir. 2011) (quoting *Repository Techs., Inc.*, 601 F.3d at 719); *see also Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir. 1987) ("'arising in' proceedings are those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy."). Since the validity of CVC's right of first refusal is not a matter that cannot be litigated outside of bankruptcy court – in fact, CVC filed a state court action to enforce the right – arising in jurisdiction does not encompass this dispute.

Some courts, particularly in the Second Circuit, have determined that the interpretation or enforcement of a bankruptcy court order is a proceeding arising in a bankruptcy case. *See, e.g., NWL Holdings, Inc. v. Eden Ctr., Inc. (In re Ames Dep't Stores, Inc.),* 317 B.R. 260, 269 (Bankr. S.D.N.Y. 2004) ("Efforts to implement, gain the fruits of, and to enforce orders of the bankruptcy court are all in this [arising in] category."). Except for the discharge injunction, courts in the Seventh Circuit have not adopted this broad reasoning, and ADM does not argue that its motion arises in a case under the Bankruptcy Code. *See Napleton*, 2016 U.S. Dist. LEXIS 26253, at *18 ("As part of this 'arising under' jurisdiction, the bankruptcy court had jurisdiction to interpret

7

and enforce the discharge injunction.") The Court concludes that it lacks "arising in" jurisdiction in this case, especially since the Debtors' discharge is not implicated, the bankruptcy case is long closed, and the parties were litigating in state court before the motion was filed.

The final statutory basis for the Court's jurisdiction is "related to" jurisdiction, and arguably, this dispute is related to a case under the Bankruptcy Code. But the Seventh Circuit Court of Appeals interprets "related to" jurisdiction narrowly. *See In re FedPak Sys., Inc.*, 80 F.3d 207, 214 (7th Cir. 1996). A case "is 'related' to a bankruptcy when the dispute 'affects the amount of property for distribution [i.e., the debtor's estate] or the allocation of property among creditors.'" *Id.* at 213-14 (quoting *In re Memorial Estates, Inc.,* 950 F.2d 1364, 1368 (7th Cir. 1991)); *see also In re Xonics, Inc.*, 813 F.2d 127, 131 (7th Cir. 1987) (although bankruptcy court had jurisdiction to adjust creditors' competing claims at the outset of the case, jurisdiction lapsed when property left the estate, unless the identification of ownership affected the recoveries of other creditors under the plan).

In *FedPak*, the Court of Appeals cited a trilogy of cases for the proposition that the bankruptcy court loses "related to" jurisdiction when assets are sold and no longer belong to the bankruptcy estate. *In re Edwards*, 962 F.2d 641, 643 (7th Cir. 1992); *Xonics*, 813 F.2d at 131; *In re Chicago, Rock Island and Pac. R.R. Co.*, 794 F.2d 1182, 1186 (7th Cir. 1986) ("*Sanborn II*"). This is exactly the scenario in this case. The Debtors sold the Ripon Property to ADM; it is no longer part of the bankruptcy estate; and the Court lacks "related to" jurisdiction over this dispute.

Equally compelling is the argument that after a plan is confirmed, the bankruptcy court's jurisdiction is reduced, by virtue of the fact that the "number of issues potentially

8

affecting the estate or the administration of the case necessarily decreases." *Federalpha Steel LLC Creditors Trust v. Fed. Pipe & Steel Corp. (In re Federalpha Steel LLC)*, 341 B.R. 872, 880 (Bankr. N.D. Ill. 2006). As the assets leave the estate, fewer issues can affect the amount of property available for distribution to creditors. *See id.* (citing *FedPak,* 80 F.3d at 214). And it is well-established that a bankruptcy court does not have jurisdiction over a dispute simply because title to property can be traced back to a debtor in bankruptcy. *Sanborn II*; *see Zerand-Bernal Grp.*, 23 F.3d at 162-63; *Xonics*, 813 F.2d at 131-32.

In sum, this Court does not have statutory subject matter jurisdiction over this dispute. ADM admits as much but urges the Court to consider the merits anyway, under the Court's "ancillary jurisdiction."

### B. Ancillary Jurisdiction

In *Travelers Indem. Co. v. Bailey*, the Supreme Court stated: "[T]he Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior orders." 557 U.S. 137, 151 (2009), citing *Local Loan Co. v. Hunt,* 292 U.S. 234 (1934). The *Travelers* decision arose from the bankruptcy of asbestos supplier Johns-Manville Corporation. Manville's reorganization plan created a trust to pay asbestos claims, funded by Manville's insurance companies, in exchange for broad releases under a channeling injunction that directed all claims to be paid from the trust. After confirmation, asbestos claimants in dozens of lawsuits sued the insurance companies for various claims. The insurance companies returned to the bankruptcy court, and eventually obtained a clarifying order that these suits were barred by the plan's channeling injunction. On appeal, the Second Circuit Court of Appeals held that the bankruptcy court lacked jurisdiction to issue the original injunction. The Supreme Court reversed, finding that

9

the original order was final, and no exceptions applied which would allow a collateral attack on the bankruptcy court's subject matter jurisdiction.

In *Travelers*, the Supreme Court's primary focus was directed at protecting the finality of orders. However, in reaching its decision, the Court commented on the doctrine of ancillary jurisdiction, as described by *Local Loan Co. v. Hunt:* "That a federal court of equity has jurisdiction of a bill ancillary to an original case or proceeding in the same court, whether at law or in equity, to secure or preserve the fruits and advantages of a judgment or decree rendered therein, is well settled." 292 U.S. at 239. *Local Loan* construed the jurisdiction of a bankruptcy court after a debtor's discharge. In a decision analyzing jurisdiction after a case was dismissed, the Supreme Court explained that ancillary jurisdiction may be asserted for two purposes: "(1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent, and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 379-80 (1994) (citations omitted).

Seeking interpretation and enforcement of the Confirmation Order, ADM argues that the latter type of ancillary jurisdiction applies here. Some courts designate this as "inherent" jurisdiction: "Bankruptcy courts have inherent or ancillary jurisdiction to interpret and enforce their own orders wholly independent of the statutory grant of jurisdiction under 28 U.S.C. § 1334." *LTV Corp. v. Back (In re Chateaugay Corp.),* 201 B.R. 48, 62 (Bankr. S.D.N.Y. 1996), *aff'd in part*, 213 B.R. 633 (S.D.N.Y. 1997). To avoid confusion with the concepts of ancillary and pendent jurisdiction, other courts use the phrase "enforcement jurisdiction." *See U.S.I. Props. Corp. v. M.D. Constr. Co.,* 230 F.3d 489, 496 (1st Cir. 2000) (footnote omitted) ("The doctrine of enforcement

10

Case 10-39796-svk    Doc 485    Filed 11/04/16    Page 10 of 17

jurisdiction is a judicial creation, born of the necessity that courts have the power to enforce their judgments.").

Whatever the name, courts agree that employment of ancillary jurisdiction is discretionary. As the Supreme Court noted in *Local Loan,* "It does not follow, however, that the court was bound to exercise its authority. And it probably would not and should not have done so except under unusual circumstances such as here exist. So far as appears, the municipal court was competent to deal with the case." 292 U.S. at 241. In *Local Loan*, since the bankruptcy court's interpretation and enforcement of the discharge injunction was more efficient and cost-effective than forcing the consumer debtor to continue litigating in the state court system, the Supreme Court recognized the propriety of the bankruptcy court's deciding the case. *See also U.S.I. Props. Corp.*, 230 F.3d at 496 ("Ancillary enforcement jurisdiction, given its origins in the courts of equity, traditionally has an equitable and discretionary character."); *Zerand-Bernal Grp. v. Cox (In re Cary Metal Prods.)*, 158 B.R. 459, 464-65 (N.D. Ill. 1993), *aff'd sub nom. Zerand-Bernal Grp., Inc. v. Cox*, 23 F.3d 159 (7th Cir. 1994) ("Ancillary jurisdiction is applied only in unusual circumstances and is strictly limited to cases where the non-bankruptcy forum cannot provide adequate relief or where other equitable factors require the bankruptcy court to exercise ancillary jurisdiction.").

The Supreme Court in *Local Loan* highlighted the time, trouble and expense of litigating the effect of the discharge in the state court system compared to the bankruptcy court, suggesting that judicial economy and fairness to the litigants are the ultimate considerations in exercising ancillary jurisdiction. 292 U.S. at 241-42. In *In re FiberMark, Inc.*, 369 B.R. 761 (Bankr. D. Vt. 2007), the bankruptcy court faced an ancillary jurisdiction issue in a closed case. After confirmation and consummation of a

Chapter 11 plan, the court approved the reorganized debtor's final report and entered a final decree. Months later, a former employee sought to reopen the case to litigate whether his employment was terminated in compliance with the terms of a severance plan that the bankruptcy court approved as part of confirmation. The reorganized debtor objected and claimed the bankruptcy court lacked jurisdiction over the two-party dispute. Citing *Kokkonen*, the court found that ancillary jurisdiction existed to enforce the agreement, plan and confirmation order. The court then analyzed whether it was appropriate to exercise ancillary jurisdiction and applied four factors to assist in the decision: judicial economy, convenience to the parties, fairness and comity. *FiberMark*, 369 B.R. at 768. The absence of a pending state court proceeding and the court's intimate familiarity with the issues in dispute led the court to exercise ancillary jurisdiction.

The factors cited by the *FiberMark* court mimic the statutory elements for permissive abstention in 28 U.S.C. § 1334(c)(1): "[N]othing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." Under well-recognized principles, when application of bankruptcy law is predominant over state law issues, abstention in favor of a pending state court proceeding is not appropriate. *See Ortiz v. Aurora Health Care, Inc. (In re Ortiz)*, 422 B.R. 161, 167 (Bankr. E.D. Wis. 2010) (citing *In re Chicago, Milwaukee, St. Paul & Pac. R.R. Co.*, 6 F.3d 1184 (7th Cir. 1993)).

This dispute involves issues of both bankruptcy law and state law, but determining which law dominates involves twists and turns reminiscent of the prior controversies in the case. For example, ADM claims that the right of first refusal is an

12

Case 10-39796-svk    Doc 485    Filed 11/04/16    Page 12 of 17

executory contract and points out that all executory contracts that were not specifically assumed were deemed rejected by the Plan and Confirmation Order. Bankruptcy Code § 365 governs the assumption and rejection of executory contracts, suggesting that this is a bankruptcy issue. But the Bankruptcy Code does not define the term "executory contract." The Seventh Circuit has adopted a narrow view that requires significant unperformed obligations on both sides. *In re Streets & Beard Farm P'ship*, 882 F.2d 233, 235 (7th Cir. 1989). And, "[i]n determining the significance of the remaining obligations under a contract we look to relevant state law." *Id.* (citing *Butner v. United States*, 440 U.S. 48, 54 (1979) (state law determines rights in assets of a bankruptcy estate)).

ADM may point out that the confirmation order purports to grant this Court exclusive jurisdiction over executory contract issues, but that grant is improper. Under 28 U.S.C. § 1334(b), the Court did not have exclusive jurisdiction over these disputes prior to confirmation, and does not have exclusive jurisdiction over them now. *See Heartland Mem'l. Hosp., LLC*, 2011 Bankr. LEXIS 2102 at *21, *31 (striking down provision in confirmed plan that purported to vest exclusive jurisdiction over "related to" litigation).

Therefore, the state court has concurrent jurisdiction to decide whether CVC's right of first refusal could be rejected as an executory contract and would apply state law to make the decision. However, this Court has already examined whether the liquidating trustee could sell the Debtors' LLC interests free of a right of first refusal and issued a comprehensive Memorandum Decision on that very issue. (Docket No. 276.) The Court is therefore well-versed in the issues involved in determining whether a right of first refusal is an executory contract and whether a bankruptcy sale can sell free and

13

clear of such a right. (The answer to both questions in the case of the Utica interests was "no," although the issue depends somewhat on the particular contract and interest at issue.)

The same analysis of the predominance of state law or bankruptcy law principles could be applied to ADM's other arguments about the effect of the Confirmation Order on the right of first refusal. Before embarking on that effort, however, an overarching consideration is the fact that CVC was not listed in the Debtors' schedules, list of contracts or mailing matrix. Even assuming that the Debtors could reject CVC's right of first refusal as an executory contract and sell the Ripon Property free and clear of CVC's right, due process would require that CVC receive appropriate notice and an opportunity to object.

In *Compak Cos., LLC v. Johnson*, 415 B.R. 334 (N.D. Ill. 2009), the court analyzed the sale of a patent and related property free and clear of liens, claims and encumbrances. An entity called DuoTech was listed as a party to an executory license agreement, but it did not receive formal notice of the § 363 sale. Applying Seventh Circuit precedent, the court found that the debtor could use § 363 to extinguish DuoTech's interest with DuoTech's consent or lack of objection. But the debtor did not send DuoTech formal notice at the address in the debtor's bankruptcy schedules, as required by Bankruptcy Rule 2002(g). The buyer's argument that DuoTech's president had actual notice of the sale through other channels was "insufficient, by itself, to satisfy due process in a bankruptcy sale under chapter 11." *Id.* at 339. Since DuoTech did not receive formal notice, the bankruptcy court concluded that the sale was void as to DuoTech, and the district court affirmed. *See also Doolittle v. County of Santa Cruz (In re Metzger)*, 346 B.R. 806, 819 (Bankr. N.D. Cal. 2006) (rejecting inquiry notice of a

14

Chapter 11 § 363 sale and voiding sale as to party who was not served with notice of hearing or sale application).

In *Metzger*, a county and a developer entered into a recorded participation agreement that included an affordable housing restriction. The developer filed a Chapter 11 petition and sold the property in a § 363 sale. The buyer defaulted on its mortgage and the buyer's lender foreclosed and bought the property. The lender and the county litigated over whether the free and clear sale eliminated the county's affordable housing restriction. The county contended that the sale order did not eliminate the restriction because the county was not given notice of the hearing at which the sale was approved. The lender argued that the county had actual knowledge of the developer's bankruptcy and that the county allegedly had been told the property would be sold free and clear of the interest.

The court first acknowledged the conflicting case law regarding treatment of restrictive covenants in a § 363 sale. However, the court did not need to decide the issue because whatever interest the county had was sufficient to require that the county receive notice of the hearing at which the court approved the sale. The court delineated the interrelated sections of the Bankruptcy Code and Rules requiring notice to a party claiming an interest in property proposed to be sold free and clear of that interest. The deliberate purpose of those sections is to "provide procedural assurance" that a party claiming an interest will receive timely, unambiguous notice and an adequate opportunity to reflect and respond. *Id.* at 815. The *Metzger* court rejected the lender's argument that the county had "inquiry notice equivalent in effect to formal notice" of the proposed sale. *Id.* at 817. In short, the court held: "The County was not served with the

15

Case 10-39796-svk    Doc 485    Filed 11/04/16    Page 15 of 17

Notice of the hearing or the Application. Accordingly, the Court did not have jurisdiction over the County and there is a per se jurisdictional defect in the Order." *Id.* at 816.

The courts in *Metzger* and *Compak* distinguished *Edwards*, *supra*, in which the Seventh Circuit Court of Appeals denied a lienholder's tardy attempt to set aside a bankruptcy sale claiming faulty notice. Many cases differentiate *Edwards* by the lienholder's eventual receipt of its lien proceeds, albeit without interest. Moreover, the *Edwards* buyer was deemed a *bona fide* purchaser; whether ADM qualifies as such is not before the Court. Finally, in *Edwards*, the trustee sold one asset for $85,000. Here, multiple assets were sold for millions of dollars. Voiding one small portion of a comprehensive sale order as to one entity's right of first refusal is distinguishable from setting aside the trustee's sale of the only asset in the case to a *bona fide* purchaser.

### III.  CONCLUSION

The Court concludes that it lacks statutory jurisdiction over ADM's Motion to Enforce the Confirmation Order. Although ancillary jurisdiction provides the basis to decide the Motion, that jurisdiction is discretionary, and due deference should be given to principles of judicial economy, fairness and comity. CVC urges the Court to defer to the pending state court proceeding. State law issues abound in the dispute, but an overriding issue is the lack of formal notice to CVC, a bankruptcy issue.

Under a due process analysis, the Court could decide that since CVC did not receive formal notice of the hearing at which the Debtors and ADM purported to strip its right of first refusal, the Confirmation Order is void as to CVC. If the order is not binding on CVC due to the lack of notice, then neither this Court nor the state court needs to decide the substantive issues including whether the right of first refusal is an executory contract that could be rejected or an interest that could be eliminated in a § 363 sale or

16

whether the Confirmation Order in fact eliminated CVC's right of first refusal. Principles of judicial economy and fairness strongly indicate that the notice issue be decided in the bankruptcy court.

Accordingly, this Court should accept jurisdiction to determine whether the failure to provide CVC (or its predecessors) with formal notice of the confirmation hearing violated due process or otherwise rendered the Confirmation Order void as to CVC. After that decision, only if necessary, the Court can decide whether the right of first refusal is an executory contract that was validly rejected. The parties should contact the Court with their availability for a scheduling conference.

IT IS SO ORDERED.

#####