THE FOLLOWING ORDER
IS APPROVED AND ENTERED
AS THE ORDER OF THIS COURT:

DATED: February 17, 2017



Susan V. Kelley
Chief United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| In re | Chapter 11 |
|---|---|
| David A. Olsen and<br>Becky S. Olsen, | Case No. 10-39796-svk |
| Paul E. Olsen and<br>Cheryl R. Olsen,<br>          Debtors. | Jointly Administered |

## MEMORANDUM DECISION AND ORDER

This case lies at the delicate intersection of an important bankruptcy policy and a party's due process rights. The issue is whether a final, non-appealable order approving a real estate sale could extinguish a right of first refusal without affording the holder of the right formal notice and the opportunity to object.

Archer-Daniels-Midland Company ("ADM") purchased assets pursuant to a confirmed Chapter 11 plan, including real property the parties refer to as the Ripon Property. When ADM later sold the Ripon Property, Country Visions Cooperative ("CVC") sued ADM in state court, asserting a right of first refusal to purchase the property. ADM asked this Court to reopen the Debtors' bankruptcy case to interpret and enforce the Debtors' Chapter 11 plan and confirmation order to bar CVC's state court

lawsuit. (Docket No. 455.) Essentially, ADM sought a determination that the right of first refusal had not survived the sale.

The Court first took the ministerial act of reopening the bankruptcy case to permit ADM to seek substantive relief. Following briefing and argument by the parties, the Court decided it had ancillary jurisdiction to interpret its confirmation order. And, since a bankruptcy issue predominated, the Court deemed it appropriate to exercise ancillary jurisdiction. In its decision, the Court stated it would "determine whether the failure to provide CVC (or its predecessors) with formal notice of the confirmation hearing violated due process or otherwise rendered the Confirmation Order void as to CVC." (Docket No. 485 at 17.) The parties have briefed this issue, and the Court now issues this Memorandum Decision.

## I. STATEMENT OF FACTS

Three important facts are undisputed. First, neither CVC nor its predecessors were listed on the Debtors' mailing matrix, and they did not receive formal notice of the Debtors' bankruptcy case.[1] Second, CVC never received service of the notices, documents and pleadings purporting to sell the Ripon Property free and clear of CVC's interest. And third, nobody gave CVC the contractual notice that the Ripon Property was being sold as required by the right of first refusal itself.

---

[1] Olsen Brothers Enterprises LLP initially granted a right of first refusal to Golden Grain LLC and Agri-Land Co-op. Golden Grain LLC assigned its rights in the right of first refusal to Agri-Land Co-op. (*See* Docket No. 458-1.) As described in the state court complaint filed by Country Visions Cooperative, Agri-Land Co-op later merged into Agri-Land Partners Cooperative, which merged into Country Visions Cooperative. (Docket No. 455-2 at 12-13, ¶¶ 25-26.) For ease of reference, the Court will refer to Golden Grain LLC, Agri-Land Co-op, Agri-Land Partners Cooperative, and Country Visions Cooperative as "CVC."

2

The facts about the informal notice that CVC may have received about the sale of the Ripon Property are less straightforward and require some background information. The Debtors filed their Chapter 11 case on December 16, 2010.[2] After an unsuccessful attempt by a group of creditors to displace the Debtors and appoint a Chapter 11 trustee, on April 14, 2011, the Debtors filed a Chapter 11 plan calling for an auction of their grain facility assets, including the Ripon Property. (Docket No. 94.) The Debtors' major secured creditor, BNP Paribas ("BNP"), filed a competing plan on June 20, 2011, and another group of creditors filed another competing plan that same day. (Docket Nos. 141, 145.) All of these parties entered mediation, and on July 27, 2011, BNP and the other major creditors filed a consensual first amended plan that had the approval of the Debtors. (Docket No. 172.) Again, the plan called for the auction of the Debtors' grain facility assets. With an agreement in place, the parties urged the Court to proceed expeditiously: the farming season was coming to a close, and the farmers and creditors who purchased the farmers' crops needed the certainty that only an approved sale could provide.[3] With the consent of the parties, the Court approved the creditors' second amended disclosure statement on July 29, 2011 and scheduled the

---

[2] David and Paul Olsen are brothers. Each brother and his wife filed a joint Chapter 11 case, and the two cases were jointly administered. (*See* No. 10-39796-svk, Docket No. 52; No. 10-39799-svk, Docket No. 45.) One plan was confirmed in the jointly-administered cases. For the sake of convenience, the Court will refer to the jointly-administered cases collectively as one "case."

[3] In the creditors' Second Amended Disclosure Statement, they reiterated "that a sale of the Debtors' Grain Facility Assets must close as soon as possible in light of the nature of the agricultural supply and service business." (Docket No. 179 at 23.) Further,
> In the midst of the harvest season, time is of the essence with regard to the sale of the Grain Facility Assets as a "going concern." As the farmers bring hundreds of millions of dollars worth of crops off the field in the upcoming weeks, it is imperative to have a party in control of the Grain Facility Assets very soon in order to provide uninterrupted marketing, drying, and storage services to customers, establish confidence, and provide a reasonable opportunity to make improvements necessary for the continuation of the business.

(Docket No. 191 at 8.)

confirmation hearing for August 26, 2011, with objections to confirmation due by August 24.[4] (Docket No. 180.) The Court later adjourned the confirmation hearing to August 30, 2011 and scheduled a sale hearing for the same date. (Docket Nos. 202, 208, 210.) Because its name was not included on the mailing matrix or service list, CVC did not receive notice of any of these events.

CVC had some inkling that a sale may be in the works. In August 2011, CVC's attorney, Charles Averbeck, telephoned BNP's counsel and left a voicemail message asking about the Ripon Property. He did not recall receiving any return call. (Docket No. 492-3 at 6-7.) Attorney Averbeck also sent a letter dated August 19, 2011 to the Debtors and one of their attorneys. The letter acknowledged that the Debtors' predecessor (Olsen Brothers Enterprises LLP) transferred the Ripon Property to the Debtors, and "We now have information that the property subject to the Right of First Refusal may be transferred again." (Docket No. 492-8 at 2.) The letter also stated that the real estate should not be packaged with any other real estate because this would defeat the right of first refusal.

However, CVC did not learn the date of the August 30 confirmation hearing until August 23, 2011 at the earliest. Attorney Averbeck could not recall that he was advised of the confirmation hearing date. But he acknowledged that on August 23, 2011, he telephoned Melissa Blair, one of the Debtors' bankruptcy attorneys. (Docket No. 497-1 at 66-68.) ADM produced a declaration from Attorney Blair stating that she told Attorney Averbeck the confirmation hearing was scheduled for August 30, and that the

---

[4] On August 2, 2011, a motion was filed requesting the notice period for the August 26 hearing be further shortened due to a technical error that resulted in some notices not being sent until August 2. (Docket No. 182.) The Court granted the motion. (Docket No. 188.)

Ripon Property was "subject to a potential sale, and that if he or his clients wished to assert any rights, under the ROFR or otherwise, they should do so prior to or at the hearing." (Docket No. 492-9 at 2.) CVC did not appear in the bankruptcy case or attend the confirmation hearing. With no objections, the Court approved the sale, confirmed the plan, and the sale of the Ripon Property to ADM closed shortly thereafter.

## II. ANALYSIS

### A. Challenges to sale orders

In *In re Edwards*, 962 F.2d 641, 644 (7th Cir. 1992), the court of appeals employed Rule 60 of the Federal Rules of Civil Procedure to analyze a challenge to a bankruptcy sale by a lienholder who did not receive notice of the sale. Fed. R. Civ. P. 60; Fed. R. Bankr. P. 9024; *see also FutureSource L.L.C. v. Reuters Ltd.*, 312 F.3d 281, 286 (7th Cir. 2002); *In re Met-L-Wood Corp.*, 861 F.2d 1012, 1018 (7th Cir. 1988); *Compak Cos. v. Johnson*, 415 B.R. 334, 340-41 (N.D. Ill. 2009). In *Edwards*, notice never reached the lienholder because the debtor listed an old address for the lienholder's lawyer, and the clerk of the bankruptcy court sent notices to that address. 962 F.2d at 642. The lienholder found out about the sale more than a year later when it received a check from the trustee for its portion of the proceeds. *Id.* at 642-43. The bankruptcy court refused to vacate the sale, and the Seventh Circuit Court of Appeals affirmed.

Rule 60(b)(4) provides that a court may relieve a party from a final judgment or order if the judgment is "void". Finding the term "void" unhelpful, the *Edwards* court faced "the practical question, in what circumstances can a civil judgment be set aside without limit of time and without regard to the harm to innocent third parties?" *Id.* at 644.

The court applied a balancing test rather than a formula, and recognized "[t]he strong policy of finality of bankruptcy sales embodied in section 363(m)" and a "strict rule in favor of the bona fide purchaser at the bankruptcy sale." *Id.* at 645-46. ADM seizes upon this language and language in the confirmation order deeming ADM a good faith purchaser entitled to the protection of § 363(m), and contends that CVC cannot contest the confirmation order. But *Edwards* does not preclude a challenge to a sale order when the applicable appeal period has expired. Rather, *Edwards* requires that this collateral relief is governed by Rule 60(b) and the balancing of the competing interests.

## B. Due process and notice to CVC of the sale to ADM

Rule 60(b)(4) applies "only in the rare instance where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271 (2010).[5] The Supreme Court teaches that due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). Since the purpose of notice is to "permit adequate preparation" for an impending hearing, *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 14 (1978), the notice must "be of such nature as reasonably to convey the required information" and it must "afford a reasonable time for those interested to make their appearance." *Mullane*, 339 U.S. at 314.

---

[5] The Court rejects any assertion by ADM that CVC is not entitled to relief under Rule 60(b) because it waited too long. (Docket No. 492 at 14-15.) Rule 60(b)(4) contains no time limit.

6

The Bankruptcy Code and Rules provide for 21 days' notice of a proposed sale of property outside of the ordinary course of business. 11 U.S.C. § 363; Fed. R. Bankr. P. 2002(a)(2), 6004(a). If property is to be sold free and clear of an interest under § 363, a motion for authority to sell is to be served on "the parties who have liens or other interests in the property to be sold" in the same manner as service of a summons and complaint. Fed. R. Bankr. P. 6004(c); *see* Fed. R. Bankr. P. 7004, 9014(b). The required notice of the proposed sale must include the date of the hearing on the sale motion and the time within which objections must be filed. Fed. R. Bankr. P. 6004(c). It must also state the time and place of a public sale and the terms and conditions of a private sale. Fed. R. Bankr. P. 2002(c)(1).

In recognition of a lienholder's due process rights, the Bankruptcy Code and Rules take very seriously the notice given when a sale adversely affects a property interest or lien. *Doolittle v. County of Santa Cruz (In re Metzger)*, 346 B.R. 806, 815 (Bankr. N.D. Cal. 2006). Of course, a party "must prove a constitutional, not merely statutory, violation to succeed on its Rule 60(b)(4) motion." *Owens-Corning Fiberglas Corp. v. Center Wholesale, Inc. (In re Center Wholesale, Inc.)*, 759 F.2d 1440, 1448 (9th Cir. 1985) (examining notice required when debtor-in-possession sought to use cash collateral or borrow funds). However, the governing rules must be considered in determining whether the timing and specificity of the notice satisfies due process considerations under the facts and circumstances of the case. *See SHF Holdings, L.L.C. v. Allamakee County (In re Agriprocessors, Inc.)*, 465 B.R. 822, 830 (Bankr. N.D. Iowa 2012) ("Procedural rules violations, while not dispositive on their face of due process issues, are still very important to the analysis.") (internal quotation omitted).

Neither the timing nor the specificity requirements of the Bankruptcy Rules were met here. CVC simply never received written notice that the Ripon Property would be sold free and clear of CVC's interest. Ambiguous information in a telephone call about a potential sale at a confirmation hearing one week away did not provide CVC with the requisite information, time or opportunity to protect its interest.

In *Metzger*, the bankruptcy court determined that despite actual notice of a bankruptcy case, the debtor's intent to sell property, and the closing date of the sale, a county did not have sufficient notice for the sale to extinguish affordable housing restrictions. 346 B.R. 806. Although it was not clear whether the county knew the sale purported to extinguish its interest, the court did not need to resolve that question because it determined the county did not have notice of the sale hearing. *Id.* at 817. The court rejected the property owner's theory that the duty to give unambiguous notice of a sale free and clear of liens could be met by putting a party on inquiry notice, finding no support for the theory. *Id.* at 819. Although the court determined actual notice of a hearing could satisfy due process concerns in some circumstances, the county was "entitled to notice of a certain specificity affording it a certain amount of time to prepare for and appear at a hearing at which the court would be asked to rule on the elimination of its interest in the Property." *Id.*

ADM makes similar arguments that CVC had sufficient notice of the sale. But, at best, CVC's attorney received notice in a telephone conversation that the Ripon Property possibly could be sold, and a confirmation hearing would be held a week later, on August 30.[6] (Docket No. 492-9 at 2.) Attorney Blair admitted that she told Attorney

---

[6] This assumes that Attorney Blair's recollection of the 2011 telephone conversation is superior to Attorney Averbeck's. Attorney Averbeck could not recall that she provided him with the hearing date.

8

Averbeck only of a "potential" sale of the Ripon Property. She advised him to assert any claims under the right of first refusal at or before the hearing. But it was presumably clear from the telephone conversation that CVC had not received service of notices throughout the case, including any documents regarding the sale, the disclosure statement or plan. Even after receiving Attorney Averbeck's call, the Debtors' attorneys did not ensure that CVC was provided with any sort of formal notice that CVC's right of first refusal was about to be extinguished.

Quoting *In re Pence*, 905 F.2d 1107, 1109 (7th Cir. 1990), ADM argues that because CVC had actual knowledge of the proceedings, and at some point, knowledge of the date of the confirmation hearing, it was "not entitled to stick its head in the sand and pretend it would not lose any rights by not participating in the proceedings." (Docket No. 499 at 8.) *Pence* is easily distinguishable. The bankruptcy court found that the creditor's claim that it had not received notice of the confirmation hearing was not supported by the evidence. *Pence*, 905 F.2d at 1109. The court of appeals determined it "could dispose of the notice issue on this basis alone." *Id.* CVC did not receive formal notice of the confirmation hearing, and the notice provided by Attorney Averbeck's inquiry of Attorney Blair did not provide sufficient or timely informal notice to CVC.

While, as the *Metzger* court suggests, informal actual knowledge may sometimes satisfy due process, ADM rather than CVC may more aptly be characterized as the ostrich in this case. Although CVC may have had general knowledge of the Debtors' bankruptcy, CVC was not listed as a creditor, party to an executory contract or interested party in the Debtors' bankruptcy schedules, and CVC's name was not on the mailing matrix used to send notices to creditors in the case. Since CVC only learned

9

the month before the confirmation hearing that the Ripon Property had been transferred from Olsen Brothers Enterprises LLC to the Debtors, there would have been no reason for CVC to follow the Debtors' bankruptcy case. (*See* Docket No. 497-1 at 62-65.)

By contrast, CVC's right of first refusal was recorded in the appropriate land records, affording the Debtors and ADM constructive knowledge of CVC's interest in the Ripon Property. *See* Wis. Stat. §§ 706.08, 706.09; *see also Kordecki v. Rizzo*, 106 Wis. 2d 713, 719-20, 317 N.W.2d 479, 482-83 (1982) (to be a good faith purchaser without constructive or actual notice of a conveyance, a party is "deemed to have examined the record and to have notice of the contents of all instruments in the chain of title and of the contents of instruments referred to in an instrument in the chain of title."). The title report showing CVC's right of first refusal was given to ADM before the closing of the sale. (Docket No. 490-1 at 24-39, 37.) Additionally, on August 12, 2011, more than two weeks before the confirmation hearing, ADM's inhouse counsel received an email from Connie Klettke with "ADM Grain" and the Ripon Property address in the signature block with a reminder about a right of first refusal on "this property." (Docket No. 490-1 at 17-22.) Under the circumstances, ADM's attempt to paint CVC as the party who knew about and ignored the sale is incongruous. It appears that ADM knew about CVC's interest in the Ripon Property before the sale, but ADM chose not to ensure that CVC's interest was dealt with in the sale.

ADM asserts that the parties participating in the proceedings also received abbreviated notice, apparently in an attempt to make the notice to CVC look comparable. (*See* Docket No. 499 at 8 n.2, referencing Docket No. 204.) Bankruptcy Rule 9006(c) permits the shortening of the notice period, and at the request of the

parties, the Court scheduled the sale hearing on shortened notice. However, the Court held the sale hearing the same day as the confirmation hearing, and the plan and disclosure statement had fully disclosed the proposed auction of the grain facility assets, including the Ripon Property. In scheduling the confirmation hearing on virtually the full 28-day notice period required by Bankruptcy Rule 2002(b), the Court relied on the representations of BNP and others that all affected parties were present at the table. For example, in a request to shorten notice of the confirmation hearing due to a technical error, counsel stated that "all creditors impaired under the Second Amended Creditors' Plan, and certain additional interested parties" had timely received the plan, disclosure statement and order scheduling the confirmation hearing. (Docket No. 182 at 2; see note 4, *supra*.) Of course, CVC, presumably impaired by the loss of its right of first refusal, had not received notice. There is simply no comparison between the notice received by the creditors who participated in the case and the ambiguous informal notice received by CVC.

### C. ADM's status as a bona fide purchaser

The Court concludes that CVC did not receive sufficient notice before its right of first refusal purportedly was eliminated. But does the policy of the finality of bankruptcy sales emphasized in *Edwards* override CVC's rights in this instance? After considering the facts and circumstances, the Court concludes that ADM is not entitled to enforce the confirmation order against CVC to extinguish CVC's rights in the Ripon Property.

In *Edwards*, the principle that "[t]he bona fide purchaser at a bankruptcy sale gets good title" decided the issue. 962 F.2d at 642. The *Edwards* court was not necessarily limiting the definition of bona fide purchaser to an entity that purchased the property in

good faith under § 363(m). Generally, a bona fide purchaser is one who has purchased "without notice of prior adverse claims." *Compak Cos.*, 415 B.R. at 342 (citing *Black's Law Dictionary* 1271 (8th ed. 2004)); *see also Agriprocessors, Inc.*, 465 B.R. at 835-36.

A buyer's actual knowledge of an interest means it is not a bona fide purchaser in the sense discussed in *Edwards*. *See Metzger*, 346 B.R. at 817. And under Wisconsin law, constructive knowledge of a document recorded in the land records defeats bona fide purchaser status. *See* Wis. Stat. §§ 706.08, 706.09; *see also Kordecki*, 106 Wis. 2d at 719-20, 317 N.W.2d at 482-83. In this case, CVC's right of first refusal was duly recorded, and the Debtors' counsel sent ADM's counsel a title report before the sale closed. Moreover, weeks before the confirmation hearing, ADM was informed by email from someone at the Ripon Property of a right of first refusal on "this property." Because of its knowledge of CVC's right of first refusal, ADM cannot claim bona fide purchaser status as to CVC.

Not only would ADM have known of CVC's interest, it could have easily determined that CVC did not receive notice of the sale. The certificates of service filed on the docket and list of the Debtors' creditors illustrate that CVC did not receive notice throughout the bankruptcy case. For such a longstanding and acrimonious case, there are relatively few creditors listed on the Debtors' mailing matrix, and the Asset Purchase Agreement included only a handful of properties. It would have been a very simple matter for a sophisticated party like ADM to obtain its own title report or confirm that all the lienholders and interest holders on the Debtors' title report were listed in the bankruptcy. This case is thus easily distinguishable from *Edwards*, where the lienholder was listed in the mailing matrix, albeit with an incorrect address. Reviewing the list of

12

creditors who received notice of the sale, the *Edwards* purchaser would not have known that the lienholder did not receive notice, while ADM clearly could have made the determination that CVC did not receive notice. The Debtors certainly bore the primary obligation to list CVC on the mailing matrix, but ADM cannot cloak itself with the mantle of a bona fide purchaser when it ignored information suggesting that CVC's rights were not addressed in the sale.

ADM disputes that *Metzger's* definition of a good faith purchaser applies in the Seventh Circuit. But even assuming actual knowledge of CVC's adverse claim does not defeat ADM's good faith purchaser status, the district court in *Compak Companies* distinguished *Edwards* on other grounds, namely, the nature of the interest the sale order purported to extinguish. 415 B.R. at 342. This case is similarly distinguishable. In *Compak Companies*, the debtor scheduled a patent sublicensee as a party to an executory contract identified as a "patent license." 415 B.R. at 336-37. The debtor did not send a motion to sell property and notice of the hearing to the sublicensee. *Id.* at 339. The license was then purportedly extinguished in the sale. Although the record suggested that the sublicensee's president had knowledge of the debtor's bankruptcy, this general knowledge was insufficient to satisfy due process in the context of a Chapter 11 sale, and under the circumstances, the bankruptcy court and district court determined that terminating the license pursuant to the sale order would violate the sublicensee's rights. *Id.* The district court concluded the sale order was void to the extent it purported to extinguish the license rights. *Id.* at 343.

The sublicensee argued that the asset purchaser was not an innocent party, and therefore its assignee could not rely on *Edwards*. *Id.* at 341-42. The district court

13

declined to determine that the asset purchaser was not an innocent purchaser. *See id.* at 342 n.9. Rather, the court determined that "[t]he more telling difference between this case and *Edwards* is the nature of the interests at stake." *Id.* at 342. An injunction in a patent infringement suit could have a "devastating impact" on the business, and the sublicensee might have lost special protections that the Bankruptcy Code contains for patent licensees in the event their license is rejected. *Id.* ADM's assertion that the *Compak Companies* court relied on these "special protections for patent licensees" to distinguish *Edwards* does not capture the scope of the reasoning.

In *Edwards*, the second mortgage holder lost only the interest on the sale proceeds during the period the trustee held the funds. *Edwards*, 962 F.2d at 645. "In effect, the bankruptcy court granted in the lienholder's absence all the protection it was due." *Compak Cos.*, 415 B.R. at 342. Here, by contrast and more akin to *Compak Companies*, CVC received no protection at all in the sale. Under ADM's theory, CVC has lost its rights under the right of first refusal without any compensation whatsoever.

Moreover, CVC requests a much more limited remedy than the lienholder requested in *Edwards*. CVC is not asking the Court to vacate the entire sale and take away property that ADM bought without compensating ADM. Rather, CVC only wants to exercise its rights under the right of first refusal. This remedy presumably gives CVC the same opportunity to purchase the Ripon Property from ADM as ADM's other potential buyer. After balancing the relative harms to the parties in this instance, CVC's rights prevail.

III.  CONCLUSION

In sum, CVC was not given notice during the bankruptcy proceedings sufficient to satisfy due process before its rights were extinguished. ADM is not a bona fide purchaser as to the Ripon Property because it had actual and constructive knowledge of the right of first refusal. Alternatively, even assuming ADM was a bona fide purchaser, CVC had a different kind of interest at stake than the lienholder in *Edwards*, and the balancing test favors CVC. Unlike in *Edwards*, CVC's right can be recognized without invalidating the entire sale and adversely affecting innocent parties. Accordingly, the plan and confirmation order were not effective to sell free and clear of CVC's interest. Whatever interest CVC had survived the sale to ADM, and the confirmation order is void to the limited extent it states otherwise. This decision has no effect on any other portion of the confirmation order.

IT IS THEREFORE ORDERED: ADM's motion to enforce the confirmation order against CVC is denied.

####